24-3061 U.S. v. Butler, G'Ante. Good morning, your honors. Paige Nichols here on behalf of the appellant G'Ante Butler. May it please the court, G'Ante Butler was convicted by a jury of participating in a drive-by shooting, and we have raised several claims of trial error that either individually or cumulatively warrant reversal. I'll dive right into issue number one. The government agrees that the district court should have instructed the jury that it could only use Zerion Butler's prior unsworn inconsistent statement to weigh Zerion's credibility. That prior statement was hearsay because it was unsworn, and so it was only admissible for the jury to judge the credibility of the declarant himself, Zerion. It was not admissible to support or impeach any other witness, and it was not admissible to prove who was present or what happened at the shooting. Again, the government agrees the district court erred by not giving that limiting instruction, and the government admits that absent that limiting instruction, it's at least possible that jurors may have used Zerion's prior statements as substantive evidence. So how valuable were those statements to the government? This is familiar territory to this court. Just two years ago in McGirt, this court recognized that the use of prior inconsistent statements as substantive evidence can be critical for the party that bears the burden of persuasion, such as the government, in a criminal case stuck with a turncoat witness who refuses to implicate the defendant at trial. This court recognized that in McGirt, and that's exactly what we have here. Well, I don't think that was the message of McGirt, really. The opinion spends a lot of time pointing out that in general, violating this standard doesn't affect trials. That's why all the evidentiary experts didn't want to require the fact that the prior statement had been under oath. And so I thought the opinion was tried to be very careful about saying why McGirt was an outlier. There were lots of reasons. It was, yes. And so you can't just say, well, McGirt says you can reverse on this ground. No, and I don't mean to be specific. The message was you better have something really specific. Right. And here, if they don't believe, I'm going to get the names wrong. Our client is Giante, and the government's witness is Chase Lewis. Yes, but the one who made the prior statement was? That would be Zerion, our client's brother. If you don't believe Zerion's testimony because he's impeached, how are you going to, how's the jury going to believe your client? Well, the jury doesn't have to believe our client. What the jury has to do is decide whether the government has borne its burden beyond a reasonable doubt to prove our client's presence. So initially, you know, the government, our client has the presumption of innocence. The government's got to get the jury all the way down here beyond a reasonable doubt to prove our client's innocence. And initially, they have- I think that argument will work every time this rule is violated. No, not every time because not every prior statement is going to go to the core question in the case, which is whether our client participated. Not every case is going to involve a single, the government having, without Zerion's statement as substantive evidence, the government only has one direct eyewitness to the shooting who says our client was there. Not every case is going to involve a lot of circumstantial evidence that just doesn't seal the deal for the government. In fact, this court has said in other cases that when the government relies on circumstantial evidence, it's easier to tip the scales into prejudice. Not every other case is going to have the government telling the jurors during closing argument that they have presented everything that they believe happened and that the jury should consider all the evidence and jury instructions telling the jurors that they are permitted to draw such reasonable inferences from the testimony as they feel are justified, which again, encourages the jury to use Zerion's statement as substantive evidence, not just to bolster Chase, but as an additional eyewitness testimony. That's what the government needed here because Chase was not that reliable. He had the same credibility problems that cooperating witnesses always have. Did the government in their closing argument say, you heard Mr. Lewis and you heard the prior statement of Zerion saying that he was there? The government did rely on Zerion's statement. And if you look at that section of the argument with blinders on, it might be just to impeach. In that moment, they're talking about Zerion's reliability. But they also, when they are telling the jurors that they ought to believe Chase Lewis, they said, you have to decide whether to believe Chase Lewis's version of events and all the evidence that the government has presented to you. That evidence that the government says, the government presented in meticulous, thorough detail exactly what they believe happened. So on the whole, with the government talking about Zerion's statement. So what I said, the government didn't say that? Oh no, the government did not say what you said. They didn't ever come up and say, you should consider the prior statement of Zerion. Oh, they did not. But they also did not say, you should not consider the prior statement of Zerion for any other purpose than this limited purpose. But that's because they didn't say it at all. But they did talk about the statement. They didn't say he was a liar. You can't believe what Zerion said. He's not telling the truth. You heard his prior statement. Well, they did say those things. Yes. Yes. In their closing. They argued about, yes, they argued about the prior statement. They argued that it was credible because of the back and forth between Zerion and the detective Blackmun. And remember, of course, that prior statement was the last piece of evidence the government put on. And it was an audio recording that was over an hour long. They even took a break in the middle of it. It was so long. Well, it was put on with the consent of the defendant. Right. We're not arguing about the admissibility of it. We're really just arguing here. Why did you even permit it? I can't tell your honor why, because probably, I don't know why. There's no strategic benefit to our client to having it in. But we know they were allowed to use it to impeach Zerion. And the only problem was. You're not challenging that. No, no, no. We're not challenging that. Right. We're only challenging the district court's refusal to limit the jury's consideration of it to its weighing of Zerion's credibility. Well, everybody sort of concedes that was error. Yes. Yes. But why isn't it just harmless error? Well. Because there was a ton of other evidence. Bullets were flying everywhere. It was a family outing almost. There were a lot of bullets. And there was a lot of physical evidence that put Giante's gun at the shooting. But not Giante himself. Gun just shot itself. Well, his brother testified that his brother used the gun. That's what I say. It's a family outing. And there was plenty of evidence to show what they were doing. I hope that your honors will read the reply brief carefully as I walk through the circumstantial evidence and explain how it is also consistent with Giante's alibi. And it is circumstantial evidence. The only direct eyewitness who puts Giante there is a cooperating witness who is trying to get as much out of his agreement as he can get because he is still awaiting his own sentencing. What was the testimony that he wasn't there? Aside from Zerion, what was the testimony that he wasn't there? It was his own testimony.  It was his own testimony. So if you, you know, if the jurors have a limiting instruction, they might just very easily say, all right, we're just going to take Zerion out of the picture. So what do we have left in terms of people who actually know what happened that night? We have Chase Lewis. He has credibility problems. We have Giante Butler. He obviously has an interest in testifying about his alibi. I don't think the analysis is that because Zerion was impeached, we just take him out of the picture. I think you say the person who gave the identical account was a liar. And that's worth using. Can't that be used to impeach Giante? Well, what we're doing here is we're trying to figure out how the, yes, what would the jury have done? And I've suggested one scenario, and Your Honor has suggested another scenario. And like this court noted in McGirt, it's always risky when we're trying to guess how the jury would have handled evidence with or without a certain instruction. But it's the government that bears that risk. It's the government that has to convince this court that the error here did not influence the jurors' deliberations. Let me ask in terms of corroboration, because the cooperating witness, there was some good corroboration about that with the phone, when the phone was used. And the one thing that didn't get a lot of attention, I didn't think, but it interested me, was when you look at the video, it looks like there are four people shooting. And that would have to mean that Giante was one of them. It doesn't have to mean that, because even Chase doesn't know how many people are in the other car that Donnell Hall was in. And Chase does not say whether or not the driver of that other car got out. And it was Arion who testified that it was another person in that car who was the fourth person. Okay, good. So again, I just wanted to emphasize that we're also arguing cumulative error. And I'll make a quick point about the Dottie Newsom testimony about the neighbor, the elderly neighbor who nearly got hit by a bullet. In doing our 403 calculation here, the danger of unfair prejudice doesn't have to be very high to exclude this evidence. And that's because we measure the unfair prejudice in comparison to the probative value of the testimony, which is really minuscule. I think the government is reaching, sounding sides is a case that points out where evidence adds little, it will be excluded more readily. So here, the probative value of her testimony is very small. The prejudicial- Well, you say it was very small. It seemed to me that it put a very clear record of what was happening at the time. Bullets were flying everywhere. She was scared out of her wits. A bullet came right through her house. The judge made a discretionary call that under 403 that that was sufficient. Now, you're telling us that we can't heed the judge's discretionary decision? Right. And you can't heed it here because that probative value is very small. There are seven law enforcement officers who were victims, who were present, who testified about all those bullets flying there. So the fact that this woman- There was plenty of evidence then. There's plenty, there is- Tons of evidence. Yeah, tons of evidence that bullets are flying. And so she didn't affect it at all. She's the only one without an interest, isn't that- She's the only one with what? Without an interest. She has no personal interest. She's not trying to get somebody or defend somebody. Well- She's just a neighbor. She probably would be very happy to have this young man who the government believes is a gang member participating in these gang wars in her neighborhood. She'd probably be very happy to have him locked up. But I understand what Your Honor is saying. And the law enforcement officers were not really testifying. I mean, they're not impeached based on their interest in convicting our client. They're impeached on their inability to recognize or identify anyone who was shooting at them. So again, I just want to make it clear that I don't have to prove that her testimony was prejudicial, just that it was- the danger that it would be prejudicial was higher than its- Substantially. Credited value. Substantially higher, yes. And it was. And if I may save my time for rebuttal.  Thank you. Good morning, Your Honors. Brian Clark for the United States. May it please the Court. John T. Butler's convictions should be affirmed. Picking up with the first issue regarding the limiting instruction, I agree with Ms. Nichols that the question is how valuable were Zerion's statements as substantive evidence to the jury in this case? And the answer is not very valuable at all. And the reason is because, as you all have pointed out, there was ample other evidence. We have Chase Lewis's eyewitness testimony. That was corroborated by a lot of circumstantial evidence that indicated that his testimony was truthful. And by the time Zerion's prior inconsistent statement is played for the jury, that is just one drop in an already full bucket of evidence that goes to show that Giante was one of the shooters. So that doesn't add much and certainly doesn't satisfy the test for showing that his testimony as substantive evidence would have substantially swayed the jury's verdict. The second point that the defendant has made is that Zerion's prior inconsistent statement as substantive evidence would have gone to impeach Giante's testimony. But Giante's version of events was the same as Zerion's version of events. And the jury properly considered Zerion's prior statement as impeaching Zerion's testimony at trial. And so, in effect, Zerion's prior inconsistent statement could probably be used to impeach the Butler brothers' version of events. And so that doesn't add very little, if anything, to the analysis for the jury. And the difference between having Zerion's prior inconsistent statement before the jury as simply impeaching his own testimony as opposed to substantive evidence is really marginal and certainly didn't substantially sway the jury's verdict. And as you say, Judge Hartz, I agree with you that McGirt was an outlier. Your Honor, in writing the opinion, did take pains to show that it was an outlier, that there were a lot of different things that lined up in the defendant's favor in that case. And that simply is not the case here. For one thing, in McGirt, this court's starting point was that the government had a weak case. The reason the government had a weak case in McGirt was because it relied on three witnesses who had given inconsistent testimony in different trials, and they were all impeached. But here, the government's case was strong. We had an eyewitness. That eyewitness, Chase Lewis's testimony, was supported by ample corroborating evidence. We had Snapchat videos. We had DNA evidence, ballistics evidence, and all the rest showing that Chase Lewis's testimony was accurate and that Giante was one of the shooters. The second difference between this case and McGirt is that in McGirt, the defendant had a plausible, coherent defense. But here, Giante's defense, which was based on the Butler brothers' testimony, resulted in them both getting sentencing enhancements for obstruction of justice because the district court found that they both lied on the stand in saying that Giante wasn't a participant. And that should give this court some indication of how believable that story was about how Giante, for some reason, gave his gun to a cousin at his parents' house, and somehow his brother knew where to go find it even though that's not where the gun was normally kept. There are all sorts of holes in the defense. Was that all brought out on cross-examination? Yes, a cross-examination of the Butler brothers. They were asked about the holes in their story, and it was all brought out in closing as well. And that was a big part of the prosecution was this sort of competing versions of events and the prosecution pointing out that the Butler brothers' version of events simply didn't make sense. And to your question, Judge Carson, about closing and discussion about Zerion's prior inconsistent statement, the prosecutor did say that Zerion's prior statement was credible, but the prosecutor discussed that statement in terms of acting as impeachment of Zerion's trial testimony that I recall or could find the prosecutor didn't get up and say, and I think Ms. Nichols acknowledged this, didn't get up and say, let's take a look at Zerion's prior statement and impeach Giante with it or support Chase's testimony with it. That's not, that I recall, what the prosecutor did. And it's also important to note that this evidence came in in the government's rebuttal case. There's several statements in the briefing that the government had to have this evidence, that it was essential to the case and core to the dispute. But that's just not accurate. By the time this statement gets played, the government has already rested. The government has already made its case, and amply so. And then with respect to the circumstantial evidence being consistent with the Butler brothers' version of events as well, that's not accurate either. I mean, Giante testified that he wasn't a member of the gang, a member of a gang, but the testimony overwhelmingly was that he was a member of the gang. Not only that, but he was the target of the shooting at the Butler's house. He testified, Giante did, that he wasn't bothered by the shooting at his parents' house, and that he was fine just staying in North Kansas City and not doing anything about it. But we also have testimony that he was in a gang war with Isaiah Shields, who just shot up his parents' house, sent his cousin and fellow gang member, Tamani Boykin, to the hospital. So it's not plausible that Giante Butler just didn't feel like he had any dog in the fight. And then another point is that Giante, in his post-arrest statement, lied about the  At that point, he knew that he had to distance himself from the gun, because he knew that he'd used the gun in the shooting a week earlier. So what did he do? He lied to Detective Blackman, saying that he didn't get the gun until afterward. That type of demonstrably false exculpatory statement is circumstantial evidence of knowledge of guilt that would have told the jury that, wait a minute, Giante's story isn't adding up and really isn't consistent with all the evidence that the government had presented. And then finally, I think that Giante's testimony that he gave up his gun, which was his only form of protection right after his parents' house got shut up, is not plausible at all. The Snapchat videos show he had that gun all the time. He had it earlier that day when he was shooting Snapchat videos with Chase Lewis. He had it a week later in his pants when he was arrested. He took it to Chipotle to pick up food. He always had it. So the idea that he gave the gun to a cousin wasn't plausible either. And that's what the district court found. Now, with respect to Ms. Newsom and her testimony, to the 403 test, I think it's important to remember that excluding evidence under Rule 403 is an extraordinary remedy that is supposed to be used rarely. And when conducting the balancing, the court is required to assume the maximum probative value and the minimum prejudicial value. And here, Ms. Newsom's testimony had probative value. She was the only neighbor who testified. The law enforcement officers who testified were impeached on cross-examination for having some kind of vested interest in the investigation, I suppose, because of a bond between law enforcement officers. Now, I know in reply, Giante argues that, no, the impeachment was really just that they were too distracted. The officers couldn't see who was shooting at them. But in context, it's not entirely clear to me what that line of impeachment questioning was for. But it certainly was to call into question the motives or the objectivity of those law enforcement officers. So calling Ms. Newsom to give her eyewitness account made sense because she wasn't subject to impeachment for those reasons. The other point is that Ms. Newsom was a longtime resident. She was able to testify that numerous other shootings had occurred over the years. And that was really important because it helped the government explain why there were old shell casings on the scene, why there were more shell casings than what matched the guns that were used that Chase Lewis testified about. And that was an important piece of the narrative to be able to explain to the jury why the evidence was what it was. And finally, I think it's important to note that just because there's a crime scene investigator or a law enforcement officer that can testify to a particular point doesn't mean that the government is then precluded from calling someone who has firsthand testimony about it. So just because a law enforcement officer could say, yeah, the Shields' house is one of the most shot up houses in Kansas City, Kansas, doesn't mean that the government has been precluded from calling Ms. Newsom, who was an eyewitness or had firsthand testimony that that was true. And so the idea that the prejudicial value substantially outweighs the probative value of her testimony, I think, just isn't there. And certainly, in any event, admission of the testimony was harmless. And unless the court has any questions, I don't believe Ms. Nichols touched on the closing arguments. And I think the briefing is sufficient on that to show that none of the prosecutor's statements in closing were improper and certainly not plainly improper. Well, we'll talk about those. Talk about those. We put on all the evidence. We put on the evidence we believe was true. That's improper, is it not? No, it's not improper in context. And that's one of the rules that this court applies when assessing statements of a prosecutor in closing, is you have to look at them in context. What the prosecutor was saying there was just explaining what the evidence was that the government had produced. And that appeared— But he said, the prosecutor said, we believe that. We put on the evidence we believed. Well, not that— That's not vouching for the evidence? Right. So what the prosecutor said, as I recall, was not that we put on the evidence that we believe, that all the witnesses, for example, were telling the truth. What she said was, we laid out for you what we believe happened. And here is the evidence that we think supports what we believe happened. And she walks through Chase Lewis' testimony and the DNA and the ballistics and all the rest and says to the jury, you're going to have to decide whether you agree with the government's version of events. And so vouching, there are two ways to vouch. The first is if a prosecutor explicitly states that a witness is telling the truth. And the second way is implicitly if the prosecutor indicates that a witness is telling the truth because of something the prosecutor knows from out of court that wasn't shown or introduced at the trial. And that statement that you referenced is neither one of those. It was just sort of an overarching statement. We put on the evidence that tells you the story, what we believe happened, and here's that evidence. You need to decide if you agree with us. What about the statement that, would he lie about that? No, he wouldn't. Okay, so I think that's an important point and I'm glad you asked because that he wouldn't quote is taken really out of context in Giante's briefing. And the reason for that is when you look at it in context, and again, that's a really important aspect of this court's analysis. You have to, you can't just pluck a statement out. You have to look at it in context. In context, the prosecutor was talking about how Chase Lewis's cooperation agreement actually gave him an incentive to tell the truth. Not that he was telling the truth, but that his cooperation agreement gave him an incentive to do so. And the case to support that is this court's decision in Bowie. And just to unpack that a little bit, in context, what the prosecutor was saying was, you just heard defense counsel get up here and tell you that Chase Lewis is lying because he was trying to receive a benefit under his cooperation agreement. But his cooperation agreement, under his cooperation agreement, he would have gotten no benefit if he was found to have been lying about Giante. And then the prosecutor posed a rhetorical question. Why would he roll the dice? Why would Chase Lewis roll the dice by lying about Giante? Question mark. He wouldn't, period. So the he wouldn't refers to why would he roll the dice? Why would he take the risk? Right, but he takes, I realize in the heat of a trial and all, your expression may not be the most precise or proper, but why couldn't he have just stopped and said, why wouldn't, why would he? Why does he have to answer the question and say, essentially, he was telling the truth? So two responses. The first is, sure, and I see my time is up. You can answer briefly. The first is, to be sure, to your point, that the prosecutor could have stopped at the end of the rhetorical question, but she didn't. And as you say, it's in the heat of trial. This is in rebuttal. It's responding to defense counsel's arguments. For all those reasons, we think it's not improper and certainly not plainly improper. But with respect to the he wouldn't, the he wouldn't, I respectfully submit, isn't telling the jury, I think, he wouldn't because I think Chase Lewis is telling the truth. What the prosecutor is trying to get across to the jury is, he wouldn't lie because then he would lose the benefit of the cooperation agreement, and that is proper under Bowie. Thank you. I just want to clarify the standards here for conceded error. The government has conceded the instructional error, and that means that the government bears a stringent burden of convincing this court that there's no grave doubt about whether that error influenced the jury's verdict. The point I want to make, actually, is that it's not a sufficiency analysis. The question is not taking away the error. Was there enough evidence left to convict? The question is about the relationship of the error to what the jury had to decide, and here the error goes directly to, it provides the jury with a substantive direct eyewitness to the only contested issue in the case. Nobody contested that there was a shooting, that there were bullets flying everywhere. Nobody contested that it was a revenge shooting. The only thing Giante contested was his presence and participation in that shooting. I don't know why I'm causing this feedback here. I apologize for that. So I just want to make sure that we're clear on where we are on this harm analysis. And I think I'll leave it at that, if the court doesn't have any more questions. Thank you, counsel. Thank you. Case is submitted.